ERIC P. PLOW v. BUG MAN EXTERMINATORS, INC.

No. 8114DC738

(Filed 4 May 1982)

1. **Professions and Occupations § 1— negligent termite inspection—sufficiency of evidence**
   The evidence was sufficient for the court to find that defendant was negligent in failing to discover termite infestation where in June 1977, defendant conducted a termite inspection of the home plaintiff was to buy, when plaintiff closed on the house in November 1977 he received a termite inspection certificate reporting no evidence of termites and a one-year inspection warranty, in December 1977, plaintiff went under the house and observed termites and termite damage, defendant's agent was called and treated the house for termites, and where a state pest control inspector testified that he inspected plaintiff's home in March 1978 at which time he observed termite infestation which was probably present at the time defendant issued the inspection certificate in July 1977.

2. **Damages § 5— damages based on cost of repairs proper**
   While the difference in market value before and after injury to property is one permissible measure of damages, the trial court did not err in assessing damages based on the cost of repair since such measure of damages is equally acceptable.

### 3. Costs § 3.1— award of attorney's fees proper

In an action upon a small claim, the trial court properly awarded attorney's fees pursuant to G.S. 6-21.1.

APPEAL by defendant from *Read, Judge.* Judgment entered 23 March 1981 in District Court, DURHAM County. Heard in the Court of Appeals 11 March 1982.

This action first arose when plaintiff filed a claim in small claims court for $500 damages allegedly resulting from an improper termite inspection. From a ruling that he had failed to prove his case, plaintiff appealed to district court for trial de novo.

At district court, plaintiff's evidence tended to show that in June, 1977, defendant conducted a termite inspection of the Chapel Hill house plaintiff was to buy. Closing on the house was delayed until November, 1977, at which time plaintiff received the termite inspection certificate reporting no evidence of termites and a one-year inspection warranty. In December, 1977, plaintiff went under the house and observed termites and termite damage. He called defendant and defendant's agent inspected and treated the house for termites.

In March, 1978, a state pest control inspector inspected plaintiff's home at his request. The state inspector required defendant to return and perform additional treatments of the house before issuing a compliance letter in August, 1978.

The state inspector testified at trial that the termite infestation he observed in March, 1978, was probably present at the time defendant issued the inspection certificate in July, 1977, but that he could not be certain.

Plaintiff testified that when defendant's agent reinspected his home in January, 1978, he pointed out and removed a wooden floor support which was touching the ground. The state inspector said this was the likely entry point for the termites and, if then present, it should have been removed or reported by defendant when the first inspection was conducted.

Plaintiff's evidence indicated that he had repaired structural damage caused by the termites at a cost of $250, allowing compensation for his labor at minimum wage, and that additional repairs costing at least the same amount were needed.

The court awarded plaintiff damages and attorney's fees based on defendant's negligence in failing to discover termite infestation in 1977. Defendant appeals.

*Donald M. Stanford, Jr., for plaintiff appellee.*

*Powe, Porter & Alphin, by Charles R. Holton and William E. Freeman, for defendant appellant.*

ARNOLD, Judge.

I.

[1] Defendant's first assignment of error is that the trial court's finding with regard to existence of termite infestation in July, 1977, was not supported by the evidence. Defendant relies heavily on the holding of our Supreme Court in *Childress v. Nordman,* 238 N.C. 708, 78 S.E. 2d 757 (1953), a case factually similar to the one before us. In *Childress,* Justice Ervin, writing for the Court, stated:

> When all is said, the testimony . . . merely shows the presence of termites in the dwelling during the last week of October, 1951. This being true, the case falls within the purview of the general rule that mere proof of the existence of a condition or state of facts at a given time does not raise an inference or presumption that the same condition or state of facts existed on a former occasion. This general rule is based on the sound concept that inferences or presumptions of fact do not ordinarily run backward. [Citations omitted.] *Id.* at 712.

The plaintiff in *Childress,* like the plaintiff here, had relied on evidence of termite infestation a short time after defendant's representation to the contrary as proof that the representation was untrue. The plaintiff in *Childress* also presented the testimony of a pest-control professional that, in his opinion, the infestation had pre-dated the representation. In these respects, the present case is indistinguishable from *Childress.* We are of the opinion, however, that *Childress* is not controlling here despite the facial similarities between the cases.

The critical distinction between *Childress* and the case now before us is that *Childress* involved a purchaser's reliance upon

representations of the vendor. At the time *Childress* was decided, courts generally adhered to the rule of *caveat emptor*, admonishing vendees to beware of vendors' representations regarding discoverable conditions. *See Calloway v. Wyatt*, 246 N.C. 129, 97 S.E. 2d 881 (1957). Although not articulated by the *Childress* court, this underlying policy undoubtedly was a factor in the outcome of that case.

The defendant here, however, is not the vendor, but an extermination company engaged for the sole purpose of providing the buyer with assurance that the house he planned to purchase was free of termites. Clearly, this distinction goes to the reasonableness of the buyer's reliance upon the accuracy of the representation. Where, as here, the buyer has relied to his detriment on representations made by an independent pest-control inspector who was paid for his inspection report and unquestionably could foresee the buyer's reliance upon the accuracy of the report, we find *Childress* distinguishable.

We note further that the *Childress* "rule" that inferences do not run backward has been riddled with exceptions. *See Jenkins v. Hawthorne*, 269 N.C. 672, 153 S.E. 2d 339 (1967); *Miller v. Lucas*, 267 N.C. 1, 147 S.E. 2d 537 (1966); *May v. Mitchell*, 9 N.C. App. 298, 176 S.E. 2d 3 (1970). The trend is toward permitting the fact finder to consider the subsequent condition or fact along with all of the surrounding circumstances in arriving at its conclusion as to the existence of the condition or fact at the relevant time. Applying this standard to the evidence before the trial judge, we find his conclusion that termite infestation existed at the time of defendant's report to have been reasonable. Where there is some evidence to support the court's findings of fact, they are conclusive on appeal although the evidence might also have supported contrary findings. *Henderson County v. Osteen*, 297 N.C. 113, 254 S.E. 2d 160 (1979). We find no error.

II.

[2] Defendant next argues that the trial court erred in awarding damages based on the cost of repairs, alleging that the only proper measure of damages for negligent injury to real property is *diminution in value*. We find this argument to be wholly without merit. While the difference in market value before and after injury is one permissible measure of damages, it is by no means the

only one. Damages based on cost of repair are equally acceptable. *See Huff v. Thornton*, 23 N.C. App. 388, 209 S.E. 2d 401 (1974).

### III.

[3]   Defendant's final assignment of error is that the trial court erred in awarding attorney's fees where there was no evidence in the record to support the award. We disagree. It has been held that the trial judge must make findings of fact to support an award of counsel fees pursuant to G.S. 6-21.1. *Hill v. Jones*, 26 N.C. App. 168, 215 S.E. 2d 168 (1975). This was done.

Given the court's broad discretion in fixing the amount of attorney's fees, we hold that the court's direct observation of plaintiff's attorney's efforts support its findings with regard to his services. Moreover, the court could correctly consider a written statement of his hours prepared by the attorney himself in arriving at a reasonable award.

Affirmed.

Judges CLARK and WEBB concur.